IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| **M.I.K.,** | : | |
| | : | |
| **Petitioner,** | : | |
| | : | |
| v. | : | **Case No. 4:25-cv-526-CDL-CHW** |
| | : | **28 U.S.C. § 2241** |
| **Warden, STEWART DETENTION** | : | |
| **CENTER,** | : | |
| | : | |
| **Respondent.** | : | |
| | : | |

## ORDER AND RECOMMENDATION

Before the Court is Respondent Warden Stewart Detention Center's motion to dismiss (Doc. 10) Petitioner M.I.K.'s application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). For the following reasons, it is **RECOMMENDED** that Respondent's motion to dismiss (Doc. 10) be **DENIED** and Petitioner's application for relief be **GRANTED**.

## BACKGROUND

Petitioner, a native of the U.S.S.R., was admitted into the United States on March 14, 1991. (Doc. 10-1, ¶ 4). At the time he entered the United States, Petitioner was four years old. (Doc. 10-2, indicating that Petitioner's date of birth is May 6, 1986). The Government contends that Petitioner is now a citizen of Ukraine. (Doc. 10-1, ¶ 3). Petitioner's status was adjusted to legal permanent resident on July 9, 1992. (*Id.*). On June 1, 2018, Immigration and Customs Enforcement ("ICE") charged Petitioner with removability under 8 U.S.C. § 1227(a)(2)(A)(iii) following his convictions for aggravated burglary, theft, and possession of a prohibited weapon. (*Id.*, ¶ 5). On June 24, 2019, an Immigration Judge ordered Petitioner removed to Ukraine. (*Id.*, ¶ 6). Petitioner did not appeal the decision. (*Id.*). Following ICE/ERO's unsuccessful attempts to obtain a travel

1

document for Petitioner, ICE/ERO released Petitioner on an order of supervision ("OSUP") on October 23, 2019. (*Id.*, ¶ 7).

On May 30, 2025, ICE/ERO encountered Petitioner at the Walker County Sheriff's Office following Petitioner's arrest for driving without a license and took Petitioner into custody. (*Id.*, ¶ 8). On October 9, 2025, ICE/ERO issued a Certificate of Identity to facilitate Petitioner's transportation to Ukraine. (Doc. 10-2). On November 6, 2025, Petitioner was manifested for removal, and he was transferred to Florence Staging Facility on November 15, 2025, for his removal. (Doc. 10-1, ¶ 10). However, on November 18, 2025, ICE/ERO was notified that Ukraine would not permit Petitioner's removal based on the Certificate of Identity form. (*Id.*, ¶ 11). Respondent has provided evidence in the form of the sworn declaration testimony of Tartanger Stephens, a supervisory detention and deportation officer with DHS, that there are currently no removal flights to Ukraine, but that ICE/ERO is continuing their efforts to effectuate Petitioner's removal. (*Id.*, ¶ 12–13).

Petitioner filed this habeas action pursuant to Section 2241 on December 8, 2025, in the United States District Court for the Northern District of Georgia. (Doc. 1). The Northern District transferred Petitioner's case to this Court on December 15, 2025. (Doc. 2). Respondent filed his motion to dismiss on January 23, 2026. (Doc. 10). Petitioner filed his response on February 18, 2026, and opposed the motion to dismiss. (Doc. 12). This motion is ripe for review.

**DISCUSSION**

Respondent moves the Court to deny Petitioner's Section 2241 petition because Petitioner has failed to meet his evidentiary burden under *Zadvydas* to show that there is no significant

likelihood of removal in the reasonably foreseeable future. The record in this case shows, to the contrary, that Petitioner has met that burden.

Under § 1231(a), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). This removal period begins on the latest of three triggering dates:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* at §§ 1231(a)(2)(B)(i)–(iii).

Detention during this 90-day "removal period" is mandatory. *Id.* at § 1231(a)(2)(A). This removal period shall be extended "and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id.* at § 1231(a)(1)(C). Detention may continue beyond the 90-day period if it is "reasonably necessary" to effectuate removal. *Zadvydas*, 533 U.S. at 689; 8 U.S.C. § 1231(a)(6).

Although § 1231(a)(6) does not limit the length of post-final order of detention, the Supreme Court of the United States determined in *Zadvydas* that detention for six months is presumptively reasonable. *Zadvydas*, 533 U.S. at 701. Following this six-month period, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable further, the Government must respond with evidence sufficient to rebut that showing." *Id.* The United States Court of Appeals for the Eleventh Circuit has explained that for

3

an alien to state a claim under *Zadvydas*, he must show "(1) that the six-month period, which commences at the beginning of the statutory removal period, has expired when the § 2241 petition is filed; and (2) 'evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Gozo v. Napolitano*, 309 F. App'x 344, 346 (11th Cir. 2009) (quoting *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002)). Only if a petitioner makes both of these showings does the burden shift to the respondent to rebut with evidence. *Zadvydas*, 522 U.S. at 701.

Respondent argues that Petitioner's Section 2241 petition should be dismissed because Petitioner has not met the second prong of *Zadvydas*, under which a petitioner "must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale*, 287 F.3d at 1052. Respondent concedes *Zadvydas*'s first prong, that Petitioner has been detained longer than six months, and argues that Petitioner has not provided *any* evidence as to the second prong. As discussed below, Petitioner has met his initial burden to shift the burden to Respondent to show that there is a significant likelihood of removal in the reasonably foreseeable future. Respondent has not met this shifted burden, and Petitioner is therefore entitled to release.

Petitioner argues that he has met his initial burden because he is not a citizen of Ukraine, and Ukraine has refused to accept his removal. In support, Petitioner asserts that he was lawfully admitted into the United States from the U.S.S.R. on March 14, 1991, and that Ukraine did not declare its independence from the U.S.S.R. until later that year. (Doc. 12, pp. 3–4). As such, Petitioner asserts, he is not a citizen of Ukraine. (*Id.*). Respondent's evidence to the contrary is in the form of Tartanger Stephens' sworn declaration testimony that Petitioner is a citizen of Ukraine.

4

(Doc. 10-1, ¶ 3). Respondent does not provide any further documentation or support for this assertion. In this case, the evidence in the record is sufficient to shift the burden to Respondent.

The record shows that Petitioner has been in ICE/ERO custody since May 30, 2025, and Respondent has been unable to effectuate Petitioner's removal in the nearly ten months since his arrest. Ukraine barred Petitioner's removal on November 18, 2025, due to an inadequate Certificate of Identity, Form I-269. (Doc. 10-1, ¶ 11). This Certificate of Identify form lists Petitioner's nationality as the U.S.S.R. and states later that the purpose of the journey is for travel to Ukraine and that "[a] national passport or any form of travel document cannot be obtained for travel to that country." (Doc. 10-2). Nowhere on this form does it state that Petitioner is a citizen of Ukraine. Respondent's own evidence establishes that there have been *no* charter removal flights since November 19, 2025. (Doc. 10-1, ¶ 12). Any of this evidence alone would shift the burden to Respondent. Taken in its totality, this evidence establishes that Petitioner has provided evidence of a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.

The burden then shifts to Respondent to show a significant likelihood of removal in the reasonably foreseeable future. Respondent has not met this burden. Respondent asserts merely that negotiations between the United States and Ukraine are ongoing and states that "if those negotiations are fruitful, the documentation necessary for Petitioner's removal is likely." (Doc. 10, p. 6). The word "if" in that sentence amounts to a concession that removal is speculative, not significantly likely. Respondent's vague declaration that negotiations are ongoing is insufficient to establish a significant likelihood of removal in the reasonably foreseeable future. (Doc. 10-1, ¶ 13). Respondent concedes that Petitioner is in a "unique situation." (Doc. 10, p. 6). A "significant likelihood" must be more than a mere possibility.

Petitioner has been detained for longer than the presumptively reasonable six-month period, and he has directed the Court to evidence of a good reason to believe that there is not a significant likelihood of removal in the reasonably foreseeable future. In response, Respondent has not met his burden to show that there is in fact a significant likelihood of removal in the reasonably foreseeable future. Therefore, Respondent's motion to dismiss should be denied and Petitioner's Section 2241 petition granted.

## CONCLUSION

For the reasons discussed herein, it is **RECOMMENDED** that Respondent's motion to dismiss (Doc. 10) be **DENIED** and Petitioner's application for habeas corpus relief (Doc. 1) be **GRANTED**..

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. Any objection is limited in length to TWENTY (20) PAGES. See M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for

failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 27th day of March, 2026.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge